**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | |
|---|---|
| CYNTHIA A. PARMELEE, Individually and on Behalf of All Others Similarly Situated,<br><br>                Plaintiff,<br><br>     v.<br><br>SANTANDER CONSUMER USA HOLDINGS INC., THOMAS G. DUNDON, ISMAIL DAWOOD, JASON KULAS, and JENNIFER DAVIS,<br><br>                Defendants. | Case No.: 3:16-CV-00783-K |

**LEAD PLAINTIFFS' UNOPPOSED MOTION FOR**
**PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**
**AND BRIEF IN SUPPORT THEREOF**

## <u>TABLE OF CONTENTS</u>

I.      INTRODUCTION ................................................................................................ 1

II.     SUMMARY OF THE LITIGATION AND SETTLEMENT............................................ 2

      A.      Procedural History ............................................................................... 2

      B.      Settlement Negotiations ....................................................................... 3

      C.      Summary of Key Terms of the Proposed Settlement............................... 4

            1.      Relief to Class Members................................................... 4

            2.      Class Notice and Settlement Administration ............................... 4

                  a.   Notice ................................................................... 4

                  b.   Administration..................................................... 5

                  c.   Costs of Notice and Administration ...................... 6

            3.      Objection and Opt-Out Exclusionary Provisions........................ 6

            4.      Release Provisions .......................................................... 6

            5.      No Admission of Liability ........................................................ 7

III.    THE SETTLEMENT MEETS THE CRITERIA NECESSARY FOR THIS COURT  TO GRANT PRELIMINARY APPROVAL ........................................................................ 7

      A.      The Settlement is Presumptively Fair and Has No Obvious Deficiencies.............. 9

      B.      The Settlement Does Not Improperly Grant Preferential Treatment.................... 11

      C.      The Settlement Does Not Grant Excessive Compensation to Attorneys.............. 13

      D.      The Settlement Benefit Falls Within the Range of Possible Approval.................. 14

IV.     THE SETTLEMENT CLASS SHOULD BE CERTIFIED FOR SETTLEMENT PURPOSES........................................................................................................ 15

      A.      Numerosity......................................................................................... 15

      B.      Commonality....................................................................................... 16

C.    Typicality ........................................................................................................... 17

D.    Adequacy ........................................................................................................... 18

E.    Common Questions Predominate and the Class Action Is Superior to Other Methods of Adjudication ................................................................................... 19

V.    NOTICE TO THE SETTLEMENT CLASS SHOULD BE APPROVED ....................... 22

VI.    PROPOSED SCHEDULE OF EVENTS ........................................................................ 24

VII.    CONCLUSION .............................................................................................................. 25

<h1 style="text-align:center"><u>TABLE OF AUTHORITIES</u></h1>

<u>CASES</u>

*Amchem Prods., Inc. v. Windsor*,
   521 U.S. 591 (1997) ............................................................................ 15, 18, 20, 21

*Bach v. Amedisys, Inc.*,
   No. 10-00395-BAJ-SCR, 2013 WL 12155421 (M.D. La. Sept. 5, 2013) ............................... 13

*Blackie v. Barrack*,
   524 F.2d 891 (9th Cir. 1975) .................................................................... 15

*Burford v. Cargill, Inc.*,
   2012 WL 5472118 (W.D. La. Nov. 8, 2012) .......................................................... 14

*Christensen v. Sur La Table, Inc.*,
   No. 1:13-cv-11357-GAO, 2014 WL 12600980 (D. Mass. 2014) ........................................... 23

*City of Omaha Police & Fire Ret. Sys. v. LHC Grp.*,
   No. 6:12-1609, 2015 WL 965693 (W.D. La. Mar. 3, 2015) ............................................ 11

*City of Omaha Police & Fire Ret. Sys. v. LHC Grp.*,
   No. 6:12-1609, 2015 WL 965696 (W.D. La. Mar. 2, 2015) ............................................ 13

*Cotton v. Hinton*,
   559 F.2d 1326 (5th Cir. 1977) ..................................................................... 7

*D'Amato v. Deutsche Bank*,
   236 F.3d 78 (2d Cir. 2001) ....................................................................... 10

*Destefano v. Zynga, Inc.*,
   No. 12-cv-04007-JSC, 2016 WL 537946 (N.D. Cal. Feb. 11, 2016) .................................... 14

*Durrett v. John Deere Co.*,
   150 F.R.D. 555 (N.D. Tex. 1993) .................................................................. 18

*Gerber v. Computer Assocs. Intern., Inc.*,
   No. 91 CV 3610, 1995 WL 228388 (E.D.N.Y. Apr. 7, 1995) ........................................... 16

*Green v. Wolf*,
   406 F.2d 291 (2d Cir. 1968) ...................................................................... 16

*Heritage Bond Litig.*,
   No. 02-ML-1475-DT(RCx), 2005 WL 1594389 (C.D. Cal. June 10, 2005) ............................... 14

*In re Advanced Battery Techs., Inc. Sec. Litig.*,
    298 F.R.D. 171 (S.D.N.Y. 2014) ...................................................... 24

*In re AT&T Corp. Sec. Litig.*,
    455 F.3d 160 (3d Cir. 2006)........................................................... 14

*In re AT&T Mobility Wireless Data Servs. Sales Tax Litig.*,
    789 F. Supp. 2d 935 (N.D. Ill. 2011) ................................................ 24

*In re China Sunergy Sec. Litig.*,
    No. 07 Civ. 7895(DAB), 2011 WL 1899715 (S.D.N.Y. May 13, 2011)................... 14

*In re Cooper Cos. Inc. Sec. Litig.*,
    254 F.R.D. 628 (C.D. Cal. 2009) ...................................................... 20

*In re Dell Inc.*,
    No. A-06-CA-726-SS, 2010 WL 2371834 (W.D. Tex. June 11, 2010) ...... 16, 17, 21

*In re Drexel Burnham Lambert Grp., Inc.*,
    960 F.2d 285 (2d Cir. 1992)......................................................... 17, 18

*In re Elec. Data Sys. Corp. Secs. Litig.*,
    226 F.R.D. 559 (E.D. Tex. 2005)........................................................ 17

*In re Enron Corp. Sec. & ERISA Litig.*,
    No. H-01-3624, 2003 WL 22494413 (S.D. Tex. July 24, 2003) ............................ 15

*In re Mut. Funds Inv. Litig.*,
    No. 04-md-15861-CCB, 2010 WL 2342413 (D. Md. May 19, 2010)...................... 23

*In re New Motor Vehicles Canadian Export Antitrust Litig.*,
    270 F.R.D. 30 (D. Me. 2010)........................................................... 23

*In re OCA, Inc. Sec. & Deriv. Litig.*,
    No. 05-2165, 2008 WL 4681369 (E.D. La. Oct. 17, 2008) ........................... 8, 11, 19

*In re Pool Products Distribution Market Antitrust Litig.*,
    2015 WL 4875464 (E.D. La. 2015) ................................................... 9, 14

*In re Reliant Sec. Litig.*,
    No. H-02-1810, 2005 WL 8152605 (S.D. Tex. Feb. 18, 2005)................................ 16

*In re Waste Mgmt., Inc. Sec. Litig.*,
    No. H-99-2183, 2002 WL 35644013 (S.D. Tex. May 10, 2002)............................ 13, 17, 18, 20

*In re Zynga Inc. Sec. Litig.*,
   No. 12-CV-04007-JSC, 2015 WL 6471171 (N.D. Cal. Oct. 27, 2015)..................................... 22

*Jenkins v. Trustmark Nat. Bank*,
   2014 WL 1229661 (S.D. Miss. Mar. 25, 2014) ........................................................................ 14

*Kemp v. Tower Loan of Miss., LLC*,
   No. 3:15-CV-499-CWR-LRA, 2017 WL 6522323 (N.D. Miss. Dec. 20, 2017)........................ 9

*Longden v. Sunderman*,
   123 F.R.D. 547 (N.D. Tex. 1988) ............................................................................................. 18

*Lyons v. Marrud, Inc.*,
   No. 66 Civ. 415, 1972 WL 327 (S.D.N.Y. June 6, 1972)......................................................... 10

*Maher v. Zapata Corp.*,
   714 F.2d 436 (5th Cir. 1983) ..................................................................................................... 8

*McNamara v. Bre-X Minerals Ltd.*,
   214 F.R.D. 424 (E.D. Tex. 2002)............................................................................................... 8

*Mullane v. Cent. Hanover Bank & Tr. Co.*,
   339 U.S. 306 (1950)................................................................................................................... 22

*Mullen v. Treasure Chest Casino, LLC*,
   186 F.3d 620 (5th Cir. 1999) ..................................................................................................... 20

*Murillo v. Texas A & M Univ. Sys.*,
   921 F. Supp. 443 (S.D. Tex. 1996) ............................................................................................. 9

*Nguyen v. Radient Pharms. Corp.*,
   No. SACV 11–00406 DOC (MLGx), 2014 WL 1802293 (C.D. Cal. May 6, 2014).......... 11, 12

*Phillips v. Joint Legislative Comm. on Performance & Expenditure Review of State of Miss.*,
   637 F.2d 1014 (5th Cir. 1981) ................................................................................................... 17

*Provectus Biopharms., Inc. Sec. Litig.*,
   No. 3:14-cv-00338-PLR-HBG, 2016 WL 7670857 (E.D. Tenn. Apr. 7, 2016) ....................... 24

*Regents of Univ. of Calif. v. Credit Suisse First Boston (USA)*,
   482 F.3d 372 (5th Cir. 2007) ..................................................................................................... 19

*Robertson v. Monsanto Co.*,
   287 Fed. App'x 354 (5th Cir. 2008) ........................................................................................... 21

*Schwartz v. TXU Corp.*,
  No. 3:02-CV-2243, 2005 WL 3148350 (N.D. Tex. Nov. 8, 2005)..................................... 13, 14

*Shaw v. Toshiba Am. Info. Sys., Inc.*,
  91 F. Supp. 2d 942 (E.D. Tex. 2000) ..................................................................... 13

*Shipes v. Trinity Indus.*,
  987 F.2d 311 (5th Cir. 1993) ................................................................................. 18

*Strong v. BellSouth Telecomm. Inc.*,
  137 F.3d 844 (5th Cir. 1998) ................................................................................. 13

*Unger v. Amedisys, Inc.*,
  401 F.3d 316 (5th Cir. 2005) ................................................................................. 20

*Zeidman v. J. Ray McDermott & Co., Inc.*,
  651 F.2d 1030 (5th Cir. 1981) ............................................................................... 16

## STATUTES

15 U.S.C. § 78u-4(a)(4) ........................................................................................... 13

15 U.S.C. § 78u–4(a)(6)........................................................................................... 13

28 U.S.C. § 1292(b) .................................................................................................. 3

## RULES

Fed. R. Civ. P. 23 ............................................................................................. *passim*

## OTHER AUTHORITIES

NEWBERG ON CLASS ACTIONS § 3.10 (4th ed. 2002) .................................................. 17

NEWBERG ON CLASS ACTIONS § 11.41 (3d ed. 1995) .................................................. 9

## I.       INTRODUCTION

Lead Plaintiffs Cynthia A. Parmelee and Kelly Baxley ("Lead Plaintiffs") and defendants Santander Consumer USA Holdings, Inc. ("Santander" or the "Company"), Thomas G. Dundon ("Dundon"), Jason A. Kulas ("Kulas"), Ismail Dawood ("Dawood"), and Jennifer Davis ("Davis," who was formerly known as Jennifer Popp) (collectively, "Defendants") have agreed to settle this case for a total of $9.5 million in cash (the "Settlement").[1]  By this unopposed motion, Lead Plaintiffs respectfully request that the Court and enter the proposed Preliminary Approval Order: (i) granting preliminary approval of the proposed Settlement; (ii) certifying, for settlement purposes only, the proposed Settlement Class;[2] (iii) approving the Parties' proposed form and method of giving notice to the proposed Settlement Class; and (iv) setting a hearing at which the Court will consider final approval of the Settlement, approval of the proposed Plan of Allocation, and Lead Counsel's motion for an award of attorneys' fees and reimbursement of Litigation Expenses.

The proposed Settlement is the result of extensive arm's-length negotiation between fully informed counsel, assisted by an independent, experienced mediator of complex class action disputes, Robert A. Meyer, Esq., of JAMS.  By the time the Action settled, Lead Plaintiffs and their counsel had conducted a detailed investigation of the facts and law underlying the alleged securities laws violations; drafted the operative 57-page consolidated amended complaint

---

[1] Unless otherwise defined herein, capitalized terms shall have the meanings ascribed to them in the Stipulation and Agreement of Settlement dated July 16, 2018 (the "Stipulation"), Appendix ("App."), Exhibit 2.

[2] The Settlement Class is defined as "all persons and entities who or which purchased Santander common stock between February 3, 2015 and March 15, 2016, inclusive." Excluded from the Settlement Class are Defendants, the officers and directors of Santander, at all relevant times, members of their Immediate Families and their legal representatives, heirs, successors or assigns and any entity in which Defendants have or had a controlling interest. Also excluded from the Settlement Class are those Persons who submit valid and timely requests for exclusion from the Settlement Class in accordance with the requirements set forth in the detailed Notice.

("Complaint"); successfully opposed Defendants' motion to dismiss; consulted with accounting, loss causation, and damages experts; prepared and exchanged detailed mediation statements addressing liability and damages issues with Defendants; and reviewed and analyzed documents produced by Defendants to confirm representations made during the mediation.  Accordingly, Lead Plaintiffs and their counsel conducted the negotiations with a thorough understanding of the strengths and weaknesses of the claims.

The proposed Settlement represents an excellent recovery for Settlement Class Members. Lead Plaintiffs estimate that the proposed Settlement exceeds the median settlement for similar securities class actions as a percentage of estimated damages.[3]  Thus, the Settlement easily falls "within the range of possible approval" and warrants preliminary approval.  Likewise, the proposed notice program satisfies the disclosure requirements of the Private Securities Litigation Reform Act of 1995 ("PSLRA") and constitutes the best practicable notice under the circumstances.  Accordingly, Lead Plaintiffs respectfully request that the Court should set a date for a settlement fairness hearing, at which time the Court will, among other things, consider the Settlement Class's reaction to the proposed Settlement and assess its fairness.

## II.      SUMMARY OF THE LITIGATION AND SETTLEMENT

### A.      Procedural History

On April 4, 2016, plaintiff Parmelee initiated this purported class action by filing a complaint alleging violations of federal securities laws against Defendants in this Court.  (ECF No. 1).  On June 21, 2016, the Court consolidated this action with the related action filed by Stuart Benson, appointed plaintiff Parmelee and plaintiff Baxley as Lead Plaintiffs, and approved Lead Plaintiffs' selection of Glancy Prongay & Murray LLP and The Rosen Law Firm, P.A. to

---

[3] *See* App. at 143 [Cornerstone Research, Securities Class Action Settlement 2017 Review and Analysis, at 6] (noting that in 2017, securities settlements involving Rule 10b-5 claims returned a median of approximately 3% of estimated damages).

serve as co-lead counsel ("Co-Lead Counsel"). (ECF No. 19).

On December 20, 2016, Lead Plaintiffs filed the operative Complaint on behalf of all persons who purchased or otherwise acquired any common stock of Santander between February 3, 2015 to March 15, 2016, both dates inclusive, and were damaged thereby.  (ECF No. 28).  The Complaint asserted claims for violations of: (i) Section 10(b) of the Securities Exchange Act of 1934 (the "Exchange Act") and Rule 10b-5 promulgated thereunder against all Defendants; and (ii) Section 20(a) of the Exchange Act against Defendants Dundon, Kulas, Dawood, and Davis.

On March 14, 2017, Defendants filed their motion to dismiss the Complaint, arguing that it failed to create a strong inference of Defendants' scienter and failed to plead loss causation. (ECF No. 44).  On January 3, 2018, the Court granted in part and denied in part Defendants' motion to dismiss, holding that the Complaint adequately stated claims for securities law violations against all Defendants, except for Santander's CFO, Ismail Dawood.  (ECF No. 52).

On January 31, 2018, Defendants filed and served a motion seeking reconsideration of the Court's Order granting in part, and denying in part, Defendants' motion to dismiss or, alternatively, certification for appellate review of such order pursuant to 28 U.S.C. § 1292(b). On February 21, 2018, Lead Plaintiffs filed and served their papers in opposition to the motion for reconsideration and, on March 7, 2018, Defendants filed and served their reply papers. While the motion for reconsideration was pending, the Parties agreed to attempt private mediation of the Action.

### B.      Settlement Negotiations

On March 8, 2018, the Parties attended a mediation in Los Angeles, California with Robert A. Meyer, Esq. of JAMS. In advance of that session, Lead Plaintiffs and Defendants submitted to the mediator and exchanged detailed confidential statements and exhibits discussing issues of liability and damages.  The full-day mediation session concluded with the Parties

3

reaching an agreement in principle to settle the Action.

C.     **Summary of Key Terms of the Proposed Settlement**

1.     **Relief to Class Members**

In full and final settlement of all claims asserted in this Action, the Defendants shall transfer or cause to be transferred into an escrow account the sum of $9,500,000.00 in cash (the "Settlement Amount").   Defendants have agreed to waive any and all claims, known or unknown, against Lead Plaintiffs and all other Settlement Class Members that arise out of or relate in any way to the claims made in this Action against Defendants.

2.     **Class Notice and Settlement Administration**

a.  Notice

Within twenty (20) business days of the entry of the Preliminary Approval Order, the third party Claims Administrator, JND Legal Adminision ("Claims Administrator"), will provide individual notice via mail, substantially in the form attached to the Stipulation as Exhibit A-4 (App. at 101-104) (the "Postcard Notice"), to each Settlement Class Member identified by records maintained by Santander or its transfer agent.   The Claims Administrator will send a Postcard Notice to all persons identified by banks, brokerage firms, or other nominees, as having purchased Santander common stock during the Settlement Class Period.   The Postcard Notice will direct potential Settlement Class Members to the Claims Administrator's website.

Contemporaneously with the mailing of the Postcard Notice, Co-Lead Counsel, through the Claims Administrator, shall cause the Stipulation and its exhibits, including, without limitation; (1) the Preliminary Approval Order; (2) a copy of the detailed Notice of (I) Class Action and Proposed Settlement; (II) Settlement Fairness Hearing; and (III) Motion for an Award of Attorneys' Fees and Reimbursement of Litigation Expenses ("Notice"), substantially in the form annexed as Exhibit A-1 to the Preliminary Approval Order (App. at 61-83); (3) the

Proof of Claim and Release ("Claim Form"), substantially in the forms annexed as Exhibit A-2 to the Preliminary Approval Order (App. at 84-96); (4) general information regarding the Settlement; and (5) instructions on how to submit a Claim Form, submit an objection, or request exclusion from the Settlement to be posted on the Claims Administrator's website.

The Claims Administrator will also publish the Summary Notice, substantially in the form annexed as Exhibit A-3 to the Preliminary Approval Order (App. at 97-100), electronically on *PR Newswire* and in print once in *Investor's Business Daily* within ten (10) business days after the entry of the Preliminary Approval Order.

The Notice describes in plain English the terms of the Settlement, the considerations that led Co-Lead Counsel and Lead Plaintiffs to conclude that the Settlement is fair and adequate, the maximum attorneys' fees award and expense reimbursement (including reimbursement of costs and expenses to the Lead Plaintiffs) that may be sought, the procedure for objecting to and opting out of the Settlement, the proposed Plan of Allocation, and the date and place of the Settlement Hearing. This notice program will fairly apprise Settlement Class Members of the Settlement and their options with respect thereto and fully satisfies due process requirements.

b. Administration

The Claims Administrator will administer distribution of the Net Settlement Fund pursuant to the Stipulation. In accordance with the Stipulation, Defendants shall pay or cause to be paid the Settlement Amount to an interest-bearing escrow account in a federally-chartered bank designated by Co-Lead Counsel (the "Escrow Account") to be controlled by said bank as the Escrow Agent for the benefit of the Settlement Class, with all interest to accrue for the benefit of the Settlement Class. Once the Settlement becomes final following entry of the final judgment, substantially in the form attached to the Stipulation as Exhibit B (the "Judgment"), no

monies shall revert to Defendants.

c.  Costs of Notice and Administration

The Stipulation provides that Co-Lead Counsel may pay from the Settlement Fund, without further approval from Defendants or further order of the Court, all Notice and Administration Costs actually incurred and paid or payable, including, without limitation, the actual costs of printing and mailing the Postcard Notice, publishing the Summary Notice, reasonable reimbursements to nominee owners for forwarding the Postcard Notice to their beneficial owners, the administrative expenses incurred and fees charged by the Claims Administrator in connection with providing notice, administering the Settlement, and the fees, if any, of the Escrow Agent.

### 3.       Objection and Opt-Out Exclusionary Provisions

A Settlement Class Member may object to the fairness of the Settlement by filing any such objection with the Court and providing copies to Co-Lead Counsel and Defendants' Counsel by the deadline set forth in the Notice.  Any Settlement Class Member who does not file a timely objection to the Settlement shall be foreclosed from seeking any adjudication or review of the Stipulation's terms by appeal or otherwise.

Any Settlement Class Member who wishes to be excluded from the Settlement Class Member may submit a written exclusion request, postmarked no later than 21 calendar days before the Settlement Hearing to the Claims Administrator.

### 4.       Release Provisions

Upon the Effective Date noted in the Stipulation, each Settlement Class Member who does not timely and validly exclude himself/herself from the Settlement Class, including any other person acting on his/her behalf or for his/her benefit, shall be deemed to have released, waived, and discharged the Defendants and Defendants' Releasees from the Released Plaintiffs'

Claims, including any Unknown Claims.

**5.      No Admission of Liability**

Each of the Defendants denies any wrongdoing, and this Settlement shall in no event be construed or deemed to be evidence of or an admission or concession on the part of any of the Defendants or any of Defendants' Releasees with respect to any claim or allegation of any fault or liability or wrongdoing or damage whatsoever, or any infirmity in the defenses that the Defendants have, or could have, asserted.  Defendants expressly deny that Lead Plaintiffs have asserted any valid claims as to any of them, and expressly deny any and all allegations of fault, liability, wrongdoing or damages whatsoever.  Similarly, this Stipulation shall in no event be construed or deemed to be evidence of an admission or concession on the part of any Lead Plaintiff of any infirmity in any of the claims asserted in the Action, or an admission or concession that any of the Defendants' defenses to liability had any merit.  Each of the Parties recognizes and acknowledges, however, that the Action has been initiated, filed and prosecuted by Lead Plaintiffs in good faith and defended by Defendants in good faith, that the Action is being voluntarily settled with the advice of counsel, and that the terms of the Settlement are fair, adequate, and reasonable.

**III.    THE SETTLEMENT MEETS THE CRITERIA NECESSARY FOR THIS COURT TO GRANT PRELIMINARY APPROVAL**

Rule 23(e) of the Federal Rules of Civil Procedure provides that before a class action may be dismissed or compromised, notice of the proposed dismissal or compromise must be given in the manner directed by the court, and judicial approval must be obtained.  The issue of whether a proposed settlement should be granted preliminary approval is a matter within the sound discretion of the district court, which should be exercised in the context of public policy strongly favoring the pretrial settlement of class action lawsuits.  *See, e.g.*, *Cotton v. Hinton*, 559

F.2d 1326, 1331 (5th Cir. 1977) ("Particularly in class action suits, there is an overriding public interest in favor of settlement."). There is a strong initial presumption that the compromise is fair and reasonable. *Maher v. Zapata Corp.*, 714 F.2d 436, 455 n.31 (5th Cir. 1983) ("[N]either the district court nor the appellate court on review, should reach ultimate conclusions on the issues of fact and law underlying the dispute.").

Preliminary approval of a proposed settlement is the first step in a two-step process required before a class action may be settled. *See McNamara v. Bre-X Minerals Ltd.*, 214 F.R.D. 424, 426 (E.D. Tex. 2002). In this first step, "the Court makes a preliminary fairness evaluation of the proposed terms of the settlement[.]"[4] *Id.* at 426, 427 n.2 ("purpose of preliminary approval is to detect ***obvious*** defects that will preclude final approval of the settlement . . .") (emphasis in original). This initial assessment can be made on the basis of information already known to the Court, which, if necessary, may be supplemented by briefs, motions, or an informal presentation from the settling parties. *Id.* "If the proposed settlement discloses no reason to doubt its fairness, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class, does not grant excessive compensation to attorneys, and appears to fall within the range of possible approval, the court should grant preliminary approval." *In re OCA, Inc. Sec. & Deriv. Litig.*, No. 05-2165, 2008 WL 4681369, at *11 (E.D. La. Oct. 17, 2008) (citations omitted); *see also McNamara*, 214 F.R.D. at 430 ("[i]f the preliminary evaluation of the proposed settlement does not disclose grounds to doubt its fairness or other obvious deficiencies . . . and appears to fall within the range of possible approval, the court should direct that notice under Rule 23(e) be given to the class members of a

---

[4] "Second, if the Court determines that the settlement is fair, the Court directs that notice pursuant to Rule 23(e) be given to the class members of a formal fairness hearing, at which arguments and evidence may be presented in support of and in opposition to the settlement." *Id.*

formal fairness hearing . . ."); *In re Pool Products Distribution Market Antitrust Litig.*, 2015 WL 4875464, at *11 (E.D. La. 2015).

Lead Plaintiffs are now requesting the Court to take the first step in this process and grant preliminary approval of the proposed settlement. Co-Lead Counsel believe the settlement, which provides an immediate and substantial cash benefit to the Class – $9,500,000 – is an excellent result and clearly in the best interest of the Settlement Class. Given the complexities of this Action and the substantial risks of continued litigation, Co-Lead Counsel believe the settlement represents an outstanding resolution of this Litigation and eliminates the risk that the Class might not otherwise recover if action were to continue. The Settlement meets all of the *OCA/McNamara* criteria, and the Court should grant preliminary approval.

### A.     The Settlement is Presumptively Fair and Has No Obvious Deficiencies

As a preliminary matter, courts in this Circuit recognize that "[t]here is an initial presumption of fairness when a proposed class settlement was negotiated at arm's length by counsel for the class." *Murillo v. Texas A & M Univ. Sys.*, 921 F. Supp. 443, 445 (S.D. Tex. 1996) (citing NEWBERG ON CLASS ACTIONS § 11.41 (3d ed. 1995)). Courts also give weight to the parties' judgment that the settlement is fair and reasonable. *See Kemp v. Tower Loan of Miss., LLC*, No. 3:15-CV-499-CWR-LRA, 2017 WL 6522323, at *4 (N.D. Miss. Dec. 20, 2017) ("The recommendation by Plaintiff's counsel and the good faith bargaining between the parties ... militates heavily in favor of approving the settlement").

On March 8, 2018, the Parties participated in an all-day mediation before a nationally regarded mediator, Robert A. Meyer, Esq., of JAMS. In advance of that session, the Parties exchanged and provided to the Mediator detailed mediation statements and exhibits addressing liability and damages. During the mediation session, both Parties made detailed, adversarial presentations about the merits of Lead Plaintiffs' claims and the defenses to those claims. The

negotiations were at all times hard-fought and at arm's length.  The mediation session concluded with the Parties reaching an agreement that the settling parties believe to be in their respective best interests.  The arm's-length nature of these negotiations and the involvement of an experienced mediator support the conclusion that the Settlement is fair and was achieved free of collusion.  *See D'Amato v. Deutsche Bank*, 236 F.3d 78, 85 (2d Cir. 2001) (a "mediator's involvement in . . . settlement negotiations helps to ensure that the proceedings were free of collusion and undue pressure").

The proponents of Settlement are highly experienced in this type of litigation and are well acquainted with the legal and factual issues of the case.  *See* Firm Resumes of The Rosen Law Firm, P.A. and Glancy Prongay & Murray LLP (ECF Nos. 9-4, 12-4).  As the court held in *Lyons v. Marrud, Inc.*, No. 66 Civ. 415, 1972 WL 327, at *2 (S.D.N.Y. June 6, 1972), "[e]xperienced and competent counsel have assessed these problems and the probability of success on the merits.  They have concluded that compromise is well-advised and necessary.  The parties' decision regarding the respective merits of their positions has an important bearing on this case." In Co-Lead Counsel's view, the Settlement provides substantial benefits to the Settlement Class, especially considering the expense, risks, difficulties, delays, and uncertainties of litigation, trial, and post-trial proceedings.

In addition, the Parties and their counsel were knowledgeable about the strengths and weaknesses of the case prior to entering into the Settlement.  Lead Plaintiffs conducted a substantial investigation prior to filing the operative Complaint, which included a thorough review of publicly available information and interviews of several former Santander employees.  Further, Lead Plaintiffs engaged accounting and damages experts, fully briefed Defendants' motion to dismiss and motion for reconsideration, reviewed documents provided by Defendants

during confirmatory discovery, and had the benefit of Defendants' mediation presentation setting forth their arguments and defenses to Lead Plaintiffs' theories of liability, damages, scienter, and loss causation.   As a result, Lead Plaintiffs and Co-Lead Counsel had an adequate basis for assessing the strength of the Settlement Class's claims and Defendants' defenses when they entered into the Settlement.

For all these reasons, the Settlement was the product of a thorough, arm's-length process, and as such, enjoys a presumption of fairness. *See City of Omaha Police & Fire Ret. Sys. v. LHC Grp.*, No. 6:12-1609, 2015 WL 965693, at *6 (W.D. La. Mar. 3, 2015) ("When a settlement is reached as the result of arms-length negotiations between competent counsel on both sides, the settlement is presumptively valid and 'ordinarily may be overcome only if its provisions are not within reasonable bounds or are illegal, unconstitutional or against public policy'"). Accordingly, the Settlement suffers from "no obvious deficiencies." *See OCA*, 2008 WL 4681369, at *11 (finding "no obvious deficiency that would preclude a finding that the settlement is fair," based on settlement having been reached following "arm's length mediation," and counsel for the parties having demonstrated familiarity with the factual and legal issues in the case).

**B.      The Settlement Does Not Improperly Grant Preferential Treatment**

The Settlement does not provide preferential treatment to Lead Plaintiffs or any other Settlement Class Members.   "[C]ourts recognize that '[a]n allocation formula need only have a reasonable, rational basis, particularly if recommended by experienced and competent counsel.'" *Nguyen v. Radient Pharms. Corp.*, No. SACV 11–00406 DOC (MLGx), 2014 WL 1802293, at *5 (C.D. Cal. May 6, 2014).   The proposed Plan of Allocation, which is set forth in ¶¶ 49-64 of the Notice (App. at 74-79), and was developed by Lead Plaintiffs' damages expert in consultation with Co-Lead Counsel, provides a fair and reasonable method to allocate the Net

Settlement Fund among Settlement Class Members who submit valid Claim Forms. The Net Settlement Fund will be allocated to Authorized Claimants on a *pro rata* basis based on the relative size of their Recognized Claims. Similar plans have repeatedly been approved by courts in this Circuit.

In *Nguyen*, the court stated that "[a] settlement in a securities class action case can be reasonable if it 'fairly treats class members by awarding a pro rata share to every [a]uthorized [c]laimant, but also sensibly makes interclass distinctions based upon, *inter alia*, … the timing of purchases of the securities at issue.'" *Id.* at *5 (citation omitted). The *Nguyen* settlement provided that "[t]he settlement fund will be distributed on a *pro rata* basis according to each class members' Recognized Loss." 2014 WL 1802293, at *5.

Like the allocation plan approved in *Nguyen*, the proposed Plan here distributes the Net Settlement Fund to Authorized Claimants "on a *pro rata* basis based on the relative size of their Recognized Claims," App. at 77, ¶ 56, with a Claimant's Recognized Claim defined as "the sum of his, her or its Recognized Loss Amounts for all shares of Santander common stock." *Id.* ¶ 55. As in *Nguyen*, in which the plan of allocation calculated recognized loss based on "when that share was purchased and sold," *see* 2014 WL 1802293, at *5, the proposed Plan here makes reasonable "interclass distinctions" among the Settlement Class Members based upon purchase and sale dates. *See* App. at 75, ¶ 52. Because the Plan's formula here, like the allocation plan approved in *Nguyen,* has a "reasonable, rational basis" underlying its provisions, the Court should find that it does not grant preferential treatment to any Settlement Class member.

Nor does the reimbursement for each of the Lead Plaintiffs' costs and expenses (including lost wages) provide any basis to conclude that the Settlement grants preferential treatment to any Settlement Class Member. Such reimbursement is specifically permitted by the

PSLRA.   15 U.S.C. § 78u-4(a)(4).   The reimbursement of costs and expenses, which will not

exceed $5,000 to each of the Lead Plaintiffs, is lower than or consistent with amounts commonly

awarded by courts within this Circuit,[5] and thus does not constitute a proper ground upon which

to conclude that the Settlement grants preferential treatment to any member of the Settlement

Class.

### C.   The Settlement Does Not Grant Excessive Compensation to Attorneys

The PSLRA expressly provides that the, "total attorneys' fees and expenses awarded by

the court to counsel for the plaintiff class shall not exceed a reasonable percentage of the amount

of any damages and prejudgment interest actually paid to the class."   15 U.S.C. § 78u–4(a)(6).

Courts assess the reasonableness of attorneys' fees to protect class members from unfair

settlements, to minimize conflicts of interest between class members and their representatives,

and to prevent perpetuating a public perception that attorneys exploit class members for hefty

fees.  *See Strong v. BellSouth Telecomm. Inc.*, 137 F.3d 844, 849-50 (5th Cir. 1998).

Co-Lead Counsel in this action intend to ask the Court to award them fees of up to one-

third of the Settlement Amount, or approximately $3,166,667.   App. at 64, ¶ 5.   Such a fee award

falls within the range that is "routinely awarded in class actions" of this nature.  *Schwartz v. TXU

Corp.*, No. 3:02-CV-2243, 2005 WL 3148350, at *27 (N.D. Tex. Nov. 8, 2005) (Kinkeade, J.)

(citing, *inter alia*, *Shaw v. Toshiba Am. Info. Sys., Inc.*, 91 F. Supp. 2d 942, 958 (E.D. Tex.

2000), for its statement that "attorneys' fees in the range from twenty-five percent (25%) to [33–

1/3%] have been routinely awarded in class actions").   Indeed, as this Court itself has

---

[5] *See, e.g.*, *In re Waste Mgmt., Inc. Sec. Litig.*, No. H-99-2183, 2002 WL 35644013, at *30-*31 (S.D. Tex. May 10, 2002) (reimbursing lead plaintiff $9,747.89 in incurred costs, expenses, and lost wages); *City of Omaha Police & Fire Ret. Sys. v. LHC Grp.*, No. 6:12-1609, 2015 WL 965696, at *10 (W.D. La. Mar. 2, 2015) (compensatory award for costs and expenses to lead plaintiff in amount of $5,000); *Bach v. Amedisys, Inc.*, No. 10-00395-BAJ-SCR, 2013 WL 12155421, at *2 (M.D. La. Sept. 5, 2013) (approving each of four named plaintiffs $5,000 each "for their participation and efforts in the Action").

recognized, "courts throughout this Circuit regularly award fees of 25% and more often 30% or more of the total recovery under the percentage-of-the recovery method." *Schwartz*, 2005 WL 3148350, at *27 (collecting cases).[6]   Therefore, the Settlement does not grant excessive compensation to Co-Lead Counsel.

### D.    The Settlement Benefit Falls Within the Range of Possible Approval

The Stipulation provides for the Settlement Amount of $9.5 million to be paid into the Settlement Fund.  Lead Plaintiffs' consultation with their expert indicated that the most likely provable class-wide damages (*i.e.*, what Lead Plaintiffs would seek if the case went to trial) would be $91 million.  Thus, the Settlement represents an excellent result, returning almost 10.44% of estimated provable damages.  And, Defendants asserted that, based on a host of loss causation issues, Lead Plaintiffs could not prove ***any*** meaningful damages.  Consequently, the settlement falls well within the range of possible approval. *See Destefano v. Zynga, Inc.*, No. 12-cv-04007-JSC, 2016 WL 537946, at *11 (N.D. Cal. Feb. 11, 2016) (citing a recent Cornerstone Research study finding that "in securities class action cases between 2013 and 2015, settlements involved a median recovery of 2.2 percent of estimated damages," which "was an increase from prior years: the median recovery was 2.1 percent in 2011 and 1.8 percent in 2012").[7]

---

[6] *See also In re Pool Products Distribution Market Antitrust Litig.*, 2015 WL 4875464, at *13 (E.D. La. 2015) (granting preliminary approval and noting that the requested attorneys' fees are "one-third of the $6 million total, making it roughly in line with other percentage awards that courts in this circuit have approved.); *Burford v. Cargill, Inc.*, 2012 WL 5472118 (W.D. La. Nov. 8, 2012) (approving 33.33 percent); *Jenkins v. Trustmark Nat. Bank*, 2014 WL 1229661 (S.D. Miss. Mar. 25, 2014) (approving 33.33 percent; "[I]t is not unusual for district courts in the Fifth Circuit to award percentages of approximately one third .").

[7] *See also In re AT&T Corp. Sec. Litig.*, 455 F.3d 160, 170 (3d Cir. 2006) (affirming final approval of settlement representing approximately 4% of total damages claimed); *In re China Sunergy Sec. Litig.*, No. 07 Civ. 7895(DAB), 2011 WL 1899715, at *5 (S.D.N.Y. May 13, 2011) (noting that the "average settlement amounts in securities fraud class actions where investors sustained losses over the past decade [which] have ranged from 3% to 7% of the class members' estimated losses"); *In re Heritage Bond Litig.*, No. 02-ML-1475-DT(RCx), 2005 WL 1594389,

For all the forgoing reasons, Lead Plaintiffs respectfully submit that the Court should grant preliminary approval.

## IV.    THE SETTLEMENT CLASS SHOULD BE CERTIFIED FOR SETTLEMENT PURPOSES

One of the Court's functions in reviewing a proposed settlement of a class action is to determine whether the action may be maintained as a class action under Rule 23.  *See Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 619-21 (1997).  Rule 23(a) establishes four prerequisites to class certification: (i) "numerosity," (ii) "commonality," (iii) "typicality," and (iv) "adequacy" of representation.  *See id.* at 613.  In addition, the Class must meet one of the three requirements of Rule 23(b).  Fed. R. Civ. P. 23.[8]

Courts have generally found securities claims to be particularly well-suited for class action status because they allow for the policies behind the securities laws to be enforced in circumstances where there are numerous investors with small individual claims that otherwise would effectively be barred from litigation.  *See Blackie v. Barrack*, 524 F.2d 891, 899 (9th Cir. 1975); *In re Enron Corp. Sec. & ERISA Litig*., No. H-01-3624, 2003 WL 22494413, at *2 (S.D. Tex. July 24, 2003) (preliminarily approving settlement and conditionally certifying class for settlement purposes).  This action is no exception and, as explained below, the settlement class satisfies each of the requirements set forth above.

### A.    Numerosity

Rule 23(a)(1) requires a class be so large that joinder of all members is "impracticable."

---

at *8 (C.D. Cal. June 10, 2005) (noting that the median percentage of investor losses recovered in settlement for the years 2002, 2003, and 2004 were 2.7%, 2.8%, and 2.3%, respectively); Cornerstone Research, *supra* note 3.

[8] In certifying the Settlement Class, however, the Court is not required to determine whether the action, if tried, would present intractable management problems, "for the proposal is that there be no trial." *Amchem*, 521 U.S. at 620; *see also* Fed. R. Civ. P. 23(b)(3)(D).

Fed. R. Civ. P. 23(a)(1).  In determining numerosity, the exact size of the Settlement Class need not be known so long as general knowledge and common sense indicate that the class is large, and numerosity is "generally assumed to have been met in class action suits involving nationally traded securities."  *Zeidman v. J. Ray McDermott & Co., Inc.*, 651 F.2d 1030, 1039 (5th Cir. 1981).

The Settlement Class easily satisfies the numerosity requirement.  During the Settlement Class Period, Santander had more than 357 million shares of common stock issued and outstanding.  This stock was actively traded on the New York Stock Exchange.  Accordingly, numerosity is readily satisfied here.  *In re Reliant Sec. Litig.*, No. H-02-1810, 2005 WL 8152605, at *4 (S.D. Tex. Feb. 18, 2005) (finding numerosity where approximately 60 million nationally traded shares were at issue and there were "thousands of geographically dispersed members of the Class"); *see also Gerber v. Computer Assocs. Intern., Inc*., No. 91 CV 3610, 1995 WL 228388, at *2 (E.D.N.Y. Apr. 7, 1995) ("[Defendant's] common stock was listed and actively traded on the New York Stock Exchange [NYSE]; therefore, it is likely that [defendant's] stockholders are not concentrated in any one geographic location, but rather, are widely dispersed.  Hence, given that there will be a variety of residences and numerous claims, joinder would be impractical.") (citing *Green v. Wolf*, 406 F.2d 291, 298 (2d Cir. 1968)).   The numerosity requirement is, therefore, easily met.

### B.    Commonality

The commonality requirement of Rule 23(a)(2) "mandates there be at least one factual or legal issue which is common to all or substantially all of the class members."  *In re Dell Inc.*, No. A-06-CA-726-SS, 2010 WL 2371834, at *3 (W.D. Tex. June 11, 2010) (citations omitted).  "The threshold of commonality is not high; it is met when there is at least one issue whose resolution will affect all or a significant number of the putative class members."  *Id.*  The test or standard

16

for meeting the Rule 23(a)(2) prerequisite is qualitative rather than quantitative; that is, there need be only a single issue common to all members of the class.  Therefore, this requirement is easily met in most cases. NEWBERG ON CLASS ACTIONS § 3.10 (4th ed. 2002).

Where, as here, "the settlement class members' claims all arise out of the same set of operative facts and are based on common legal theories – that Defendants' misrepresentations violated federal securities law, [Santander's] public statements were false and misleading, Defendants knew their statements were false when they made them, the price of [Santander's] common stock was artificially inflated during the Class Period as a result of the fraud, and certain [Santander] stockholders sustained damages as a result" – the Court should conclude that "factual or legal issues common to all the settlement class members are without doubt present in this case." *Dell*, 2010 WL 2371834, at *3.  Thus, the commonality requirement is met. *Waste Mgmt.*, 2002 WL 35644013, at *13 (concluding that "[t]here is no doubt that questions of law and fact exist that are common to members of the Class in this case" because "[a]llegations of a common course of fraudulent conduct, such as those set forth in the Complaint, generally satisfy the commonality requirement").

### C.      Typicality

Rule 23(a)(3) requires that the representative's claim be typical of those of the members of the class.  The typicality requirement is satisfied where, as here, "each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability." *In re Drexel Burnham Lambert Grp., Inc.*, 960 F.2d 285, 291 (2d Cir. 1992).  Typicality does not require that the interests of the named representatives and the class members be identical. *See Phillips v. Joint Legislative Comm. on Performance & Expenditure Review of State of Miss.*, 637 F.2d 1014, 1024 (5th Cir. 1981); *In re Elec. Data Sys. Corp. Secs. Litig.*, 226 F.R.D. 559, 565 (E.D. Tex. 2005), *aff'd*, 429 F.3d 125 (5th Cir. 2005)

17

("[f]actual differences do not defeat typicality if the claims arise from a similar course of conduct and share the same legal theories").

Here, Lead Plaintiff's claims arise from the same course of conduct by the Defendants and are predicated on the same legal theories as the claims of all other Class Members.  The typicality requirement of Rule 23(a) is, therefore, met.  *See Durrett v. John Deere Co*., 150 F.R.D. 555, 558 (N.D. Tex. 1993); *Waste Mgmt.*, 2002 WL 35644013, at *14 (citations omitted) Lead Plaintiffs' "legal and remedial theories are the same as those of the other Class Members"); *see also Shipes v. Trinity Indus*., 987 F.2d 311, 316 (5th Cir. 1993) (test for typicality, like commonality, is not demanding).

### D.      Adequacy

Rule 23(a)(4) requires that the representative parties fairly and adequately protect the interests of the class.  The adequacy requirement "serves to uncover conflicts of interest between named parties and the class they seek to represent."  *Amchem*, 521 U.S. at 625.  The factors relevant to a determination of adequacy are: (1) the absence of potential conflict between the named plaintiff and the class members; and (2) that counsel chosen by the representative parties is qualified, experienced, and able to vigorously conduct the proposed litigation.  *Drexel*, 960 F.2d at 291; *Longden v. Sunderman*, 123 F.R.D. 547, 557 (N.D. Tex. 1988).

Here, as described above, Lead Plaintiffs – the proposed Settlement Class representatives – have claims which are typical of and coextensive with those of the Settlement Class.  Lead Plaintiffs, like all Settlement Class members, purchased or otherwise acquired the common stock of Santander at artificially inflated prices during the Settlement Class Period as a result of Defendants' alleged materially false and misleading statements, and was allegedly damaged thereby.  *See, e.g.*, *Waste Mgmt.*, 2002 WL 35644013, at *16 (finding lead plaintiff to "possess[ ] the same interests and suffered the same injury as other Class Members" in

describing the lead plaintiff's loss in purchasing Waste Management securities during the class period).  There is, therefore, no conflict between Lead Plaintiffs and the Settlement Class they seek to represent.

Furthermore, Lead Plaintiffs have retained The Rosen Law Firm, P.A. and Glancy Prongay & Murray LLP to serve as Co-Lead Counsel in this Action.  Co-Lead Counsel are experienced in prosecuting class actions as class counsel and/or lead counsel, having successfully prosecuted securities class actions in courts throughout the country.  ECF Nos. 9-4, 12-4 (The Rosen Law Firm, P.A. and Glancy Prongay & Murray LLP firm resumes, respectively); *OCA*, 2008 WL 4681369, at *10 (finding lead counsel and liaison counsel adequate based on their respective resumes establishing their experience, knowledge of applicable law, record of significant recoveries on behalf of investors, and the substantial resources they committed to the action).

Because Lead Plaintiffs are adequate representatives of the Settlement Class, and its counsel are qualified, experienced, and capable of prosecuting this Action, the requirements of Rule 23(a)(4) are satisfied.

### E.     Common Questions Predominate and the Class Action Is Superior to Other Methods of Adjudication

In addition to satisfying the Rule 23(a) requirements, Lead Plaintiffs must satisfy at least one sub-section of Rule 23(b) in order to certify a class.  *Regents of Univ. of Calif. v. Credit Suisse First Boston (USA)*, 482 F.3d 372, 295 (5th Cir. 2007).  Lead Plaintiffs assert that their claims satisfy Rule 23(b)(3)'s requirement that "the questions of law or fact common to class members predominate over any questions affecting only individual members, and ... a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."  Fed. R. Civ. P. 23(b)(3).  Both the superiority and predominance requirements are

met in this case.

The predominance inquiry requires the questions of law or fact common to the members of the class "predominate over any questions affecting only individual members." *Unger v. Amedisys, Inc.*, 401 F.3d 316, 320 (5th Cir. 2005).   Predominance "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation."  *Amchem*, 521 U.S. at 623.   In order for common questions of law or fact to predominate, "common issues must constitute a significant part of the individual cases."  *Mullen v. Treasure Chest Casino, LLC*, 186 F.3d 620, 626 (5th Cir. 1999) (citation omitted).   The test is "readily met in certain cases alleging . . . securities fraud[.]" *Amchem*, 521 U.S. at 625.

In this action, questions of law and fact that are common to all members of the Settlement Class "predominate over any conceivable individual question" because Defendants' "alleged misconduct affected the members of the Class in the same manner."  *Waste Mgmt.*, 2002 WL 35644013, at *16.  Such common questions include: (i) whether Defendants made statements to the investing public during the Settlement Class Period that misrepresented material information about Santander's financial condition, including its TDR impairment rate, allowance for credit losses, and net income; (ii) whether Defendants acted willfully, knowingly, or with deliberate recklessness in making these misrepresentations; (iii) whether Defendants' misrepresentations constituted fraud on the market by artificially inflating the market price of Santander shares of common stock during the Settlement Class Period; and (iv) whether the class members have sustained damages caused by Defendants' statements.  While the amount of damages may differ among members of the Settlement Class, liability and the proper measure of damages can be determined on a class-wide basis.  *In re Cooper Cos. Inc. Sec. Litig.*, 254 F.R.D. 628, 640 (C.D. Cal. 2009) ("'[T]he critical questions of what Defendants said, what they knew, what they

withheld, and with what intent they acted, are central to all class members' claims.... Issues such as certain members' damages, timing of sales and purchases, or standing to file suit, do not have the same primacy"). Thus, this case illustrates the principle that the predominance requirement is "readily met" in many securities fraud class actions. *Amchem*, 521 U.S. at 625.

Requiring only that a class action be "superior to other available methods for the fair and efficient adjudication of the controversy," Fed. R. Civ. P. 23(b)(3), the superiority analysis is "fact-specific and will vary depending on the circumstances of any given case." *Robertson v. Monsanto Co.*, 287 Fed. App'x 354, 361 (5th Cir. 2008). Factors relevant to a finding of superiority include:

(a)     the interest of members of the class in individually controlling the prosecution or defense of separate actions;

(b)     the extent and nature of any litigation concerning the controversy already commenced by or against the members of the class;

(c)     the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and

(d)     the difficulties likely to be encountered in the management of a class action.

Fed. R. Civ. P. 23(b)(3).

Upon consideration of these factors, the Court should conclude, as in *Dell*, that "a class action is undoubtedly the best available method of litigating the case." 2010 WL 2371834, at *4. For many, if not most, of the Settlement Class Members, prosecution of a costly damages action on their own behalf does not provide a realistic or efficient alternative. "Most of the class members would have absolutely no incentive to litigate their claims outside the purview of a class action, as their losses are relatively small and the hurdles to bringing a suit in the context of the PSLRA are relatively high." *Id.* at *4. Moreover, if Lead Plaintiffs and the Settlement Class members "each brought individual actions, they would each be required to prove the same

wrongdoing to establish Defendants' liability.   Different courts could interpret the claims different, resulting in inconsistent rulings or unfair results." *In re Zynga Inc. Sec. Litig.*, No. 12-CV-04007-JSC, 2015 WL 6471171, at *7 (N.D. Cal. Oct. 27, 2015).   By thus avoiding the possibility of repetitious litigation and efficiently resolving the claims of the entire Settlement Class at once, this action satisfies the superiority requirement.

Because common questions of law and fact predominate and a class action is the superior method of adjudication, this Action meets the requirements of Rule 23(b)(3).   Solely for the purposes of settlement, Defendants do not dispute that the Settlement Class should be certified in accordance with Rule 23(b)(3). As such, the Court should conditionally certify the Settlement

## V.      NOTICE TO THE SETTLEMENT CLASS SHOULD BE APPROVED

Lead Plaintiffs respectfully request that the Court approve the form, content, and methods of dissemination of the proposed Notice of (I) Class Action and Proposed Settlement; (II) Settlement Fairness Hearing; and (III) Motion for an Award of Attorneys' Fees and Reimbursement of Litigation Expenses, the Postcard Notice, and the Summary Notice (collectively, the "Notices").   *See* Preliminary Approval Order, Exhibits A-1, A-3, and A-4, respectively.   The Parties have agreed on their content, format, and methods of dissemination.

Rule 23(c)(2)(B) requires a certified class to be provided with "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort."   Rule 23(e) is less specific, requiring only that notice of the proposed settlement be given "in a reasonable manner to all class members who would be bound by the proposal."   Due process requires that the notice be "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections."   *Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 314 (1950).

As outlined in the proposed Preliminary Approval Order, Co-Lead Counsel will notify Settlement Class Members of the pendency of the Action and the proposed Settlement by causing the Postcard Notice to be mailed to all Settlement Class Members who can be identified with reasonable effort.  The Postcard Notice will advise Settlement Class Members of: (i) the pendency of the Action as a class action; (ii) the essential terms of the Settlement; (iii) the proposed Plan of Allocation; and (iv) information regarding Co-Lead Counsel's motion for attorneys' fees and reimbursement of Litigation Expenses.  The Postcard Notice will also provide specifics on the date, time, and place of the Settlement Hearing and set forth the procedures, as well as deadlines, for opting out of the Settlement Class, for objecting to the Settlement, the proposed Plan of Allocation, and/or the motion for attorneys' fees and reimbursement of Litigation Expenses, and for submitting a Claim Form.  The proposed Preliminary Approval Order also requires Lead Counsel to cause the Summary Notice to be published once in *Investor's Business Daily* and to be transmitted once over the *PR Newswire*.  Moreover, Co-Lead Counsel will also cause a copy of the Notice and Claim Form to be available on the settlement website established by the Claims Administrator, along with other information that Settlement Class Members may find useful and relevant to the litigation, the Settlement, and their claims decisions.  Courts routinely find that these methods of notice are sufficient.  *See, e.g.*, *In re Mut. Funds Inv. Litig.*, No. 04-md-15861-CCB, 2010 WL 2342413, at *6 (D. Md. May 19, 2010) (finding that a combination of post card notices, summary notices, and a long-form notice available online "is the best notice practical under the circumstances and allows Class Members a full and fair opportunity to consider the proposed Settlements."); *Christensen v. Sur La Table, Inc.*, No. 1:13-cv-11357-GAO, 2014 WL 12600980, at *1 (D. Mass. 2014) (granting preliminarily approval and approving postcard notice); *In re New Motor Vehicles Canadian*

*Export Antitrust Litig.*, 270 F.R.D. 30, 35 (D. Me. 2010).   In particular, "[t]he use of a combination of a mailed post card directing class members to a more detailed online notice has been approved by courts." *In re Advanced Battery Techs., Inc. Sec. Litig.*, 298 F.R.D. 171, 183 n.3 (S.D.N.Y. 2014) (citing cases); *In re AT&T Mobility Wireless Data Servs. Sales Tax Litig.*, 789 F. Supp. 2d 935, 973 (N.D. Ill. 2011) ("The postcard notice was more than sufficient."); *In re Provectus Biopharms., Inc. Sec. Litig.*, No. 3:14-cv-00338-PLR-HBG, 2016 WL 7670857, at *2 (E.D. Tenn. Apr. 7, 2016) (approving an "Internet Long Form Notice," a "Proof of Claim," a "Summary Notice," and a "Postcard Notice" as "the best notice practicable under the circumstances and shall constitute due and sufficient notice to all Persons entitled thereto").[9]

## VI.    PROPOSED SCHEDULE OF EVENTS

Lead Plaintiffs respectfully propose the schedule set forth below for Settlement-related events.   The timing of events is determined by the date the Preliminary Approval Order is entered and the date the Settlement Hearing is scheduled.   If the Court agrees with the proposed schedule, Plaintiffs request that the Court schedule the Settlement Hearing for a date that is 110 calendar days after the date of entry of the Preliminary Approval Order, or at the Court's earliest convenience thereafter.

| Event | Deadline for Compliance |
|---|---|
| Deadline for mailing the Postcard Notice to the Settlement Class ("Notice Date") and publishing the Notice and Claim Form on the Claim Administrator's website. | 20 business days after the entry of Preliminary Approval Order. (Preliminary Approval Order ¶ 7(b), (c)) |
| Deadline for publishing Summary Notice. | 10 business days after the Notice Date. (Preliminary Approval Order ¶ 7(d)) |
| Filing of papers in support of final approval of the Settlement, the Plan of Allocation, | 35 calendar days before the Settlement Hearing (Preliminary Approval Order ¶ 26) |

---

[9] With an estimated Settlement Class size of up to 100,000 shareholders, dissemination of the Long Form Notice and Proof of Claim form via U.S. Mail would be far more expensive than the Postcard Notice, and multiple claims administrators have expressed to Co-Lead Counsel that there is no material difference in class member response rates between the two notice methods.

| and Co-Lead Counsel's fee and expense request | |
|---|---|
| Receipt deadline for objections and requests for exclusion from the Settlement Class | 21 calendar days before the Settlement Hearing (Preliminary Approval Order ¶¶ 13, 16, 17) |
| Filing of reply papers in support of final approval of the Settlement, the Plan of Allocation, and Lead Counsel's fee and expense request | 7 calendar days before the Settlement Hearing (Preliminary Approval Order ¶ 26) |
| Settlement Fairness Hearing | At the Court's convenience, at least one hundred ten (110) calendar days following the entry of the proposed Preliminary Approval Order (Preliminary Approval Order ¶ 5) |
| Deadline for submitting Claim Forms | 120 calendar days after the Notice Date (Preliminary Approval Order ¶ 10) |

## VII.    CONCLUSION

For all the foregoing reasons, Lead Plaintiffs respectfully request that the Court grant their motion.

Dated:  July 16, 2018                                      Respectfully submitted,

**GLANCY PRONGAY & MURRAY LLP**


By:  *s/ Lionel Z. Glancy*
Lionel Z. Glancy
Lesley F. Portnoy
1925 Century Park East, Suite 2100
Los Angeles, CA 90067
Telephone: (310) 201-9150
Facsimile:  (310) 201-9160
Email:  info@glancylaw.com

**THE ROSEN LAW FIRM, P.A.**
Jacob Goldberg
Keith R. Lorenze (TX Bar #24046313)
101 Greenwood Avenue, Suite 440
Jenkintown, PA  19046
Telephone: (215) 600-2817
Facsimile: (212) 202-3827
Email: jgoldberg@rosenlegal.com
klorenze@rosenlegal.com

Laurence Rosen
Philip Kim
275 Madison Avenue, 34th Floor
New York, NY  10016
Telephone: (212) 686-1060
Facsimile: (212) 202-3827
Email: lrosen@rosenlegal.com
pkim@rosenlegal.com

**THE BRISCOE LAW FIRM, PLLC**
Willie Briscoe
8150 N. Central Expressway, Suite 1575
Dallas, Texas  75206
Telephone: (214) 239-4568
Facsimile: (281) 254-7789

*Attorneys for Lead Plaintiffs and the Class*

## <u>CERTIFICATE OF CONFERENCE</u>

On Friday, July 13, 2018, the parties met and conferred concerning the finalization of the terms of settlement.  Having reached agreement on all outstanding issues, on July 16, 2018, the parties executed the Stipulation of Settlement and the foregoing Motion for Preliminary Approval of Settlement was thereafter filed.


*/s/ Lionel Z. Glancy*
Lionel Z. Glancy

## CERTIFICATE OF SERVICE

I hereby certify that on the 16th day of July, 2018, a true and correct copy of the foregoing document was served by CM/ECF to the parties registered to the Court's CM/ECF system.

**GLANCY PRONGAY & MURRAY LLP**

By:  *s/ Lionel Z. Glancy*
Lionel Z. Glancy
Lesley F. Portnoy
1925 Century Park East, Suite 2100
Los Angeles, CA 90067
Telephone: (310) 201-9150
Facsimile:  (310) 201-9160
Email:  info@glancylaw.com