**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | |
|---|---|
| CYNTHIA A. PARMELEE, Individually and on Behalf of All Others Similarly Situated,<br><br>*Plaintiff*,<br><br>v.<br><br>SANTANDER CONSUMER USA HOLDINGS INC., THOMAS G. DUNDON, JASON KULAS, and JENNIFER DAVIS,<br><br>*Defendants*. | **C.A. No. 3:16-cv-00783-K** |

# LEAD PLAINTIFFS' UNOPPOSED MOTION FOR APPROVAL OF DISTRIBUTION PLAN

Lead Plaintiffs and Class Representatives Cynthia A. Parmelee and Kelly Baxley ("Lead Plaintiffs") hereby move this Court for an Order: approving the administrative determinations of JND Legal Administration ("JND"), accepting and rejecting the claims submitted as recommended herein and in the Declaration of Jack Ewashko in Support of Lead Plaintiffs' Motion for Approval of Distribution Plan (the "Ewashko Declaration"); and (b) directing distribution of the Net Settlement Fund to Authorized Claimants.

## I. PRELIMINARY STATEMENT

Lead Plaintiffs, on behalf of themselves and the Settlement Class, respectfully submit this memorandum of law in support their Unopposed[1] Motion for Approval of Distribution Plan (the "Motion").[2] The proposed plan for distribution of the Net Settlement Fund is set forth in the accompanying Ewashko Declaration.

## II. BACKGROUND

On July 16, 2018, the Parties entered into the Stipulation, the terms of which established a $9,500,000 Settlement Fund on behalf of the Settlement Class, consisting of all persons who or which purchased Santander common stock between February 3, 2015 and March 15, 2016, inclusive, and were damaged thereby.

The Court granted preliminary approval of the Settlement on September 11, 2018. ECF No. 65 (the "Preliminary Approval Order"). Pursuant to the Preliminary Approval Order, the Claims Administrator mailed 27,778 Postcard Notices to potential members of the Settlement Class, published the Summary Notice in *Investor's Business Daily* and transmitted the Summary Notice

---

[1] Lead Counsel have conferred with Defendants' Counsel and Defendants' Counsel do not oppose this Motion.

[2] Unless otherwise stated, all capitalized terms that are not defined herein have the same meanings as set forth in the Stipulation and Agreement of Settlement dated July 16, 2018 (ECF No. 64, Ex. 2, the "Stipulation"), or the Ewashko Declaration submitted on behalf of the Court-approved Claims Administrator, JND Legal Administration ("Claims Administrator").

over *PR Newswire* (a national newswire service), established a settlement website (www.SantanderSecuritiesLitigation.com) and set up a telephone hotline. *See* Ewashko Decl. ¶¶ 5-7. The website and hotline enabled Settlement Class Members to obtain information about the Settlement, including deadlines for requesting exclusion, objecting, and filing claims, and provided access to important documents relevant to the Settlement, including the Stipulation, Notice and Claim Form.

On June 3, 2019, the Court entered: (1) an order granting final approval of the Settlement as fair, reasonable, and adequate (ECF No. 85); and (2) an order approving the Plan of Allocation, as providing a fair and equitable basis upon which to allocate the proceeds of the Settlement.[3] ECF No. 87.

Lead Plaintiffs and their counsel now request that the Court authorize the distribution of the Net Settlement Fund (after payment of the Claims Administrator expenses as discussed below, and payment of, or reserve for, taxes, tax preparation fees and escrow fees) to Authorized Claimants.

## III. CLAIMS ADMINISTRATION

Pursuant to the Court-approved Notice, all Settlement Class Members wishing to participate in the Settlement were notified that they were required to submit Claim Forms by mail, postmarked on or before February 7, 2019. ECF No. 68-1, Ex. B at 3. However, as a result of two instances of brokers belatedly providing the names and addresses of potential Settlement Class Members to the Claims Administrator, the Court ultimately extended the claims filing deadline to May 17, 2019. ECF No. 81. The Claims Administrator received and reviewed 22,379 submitted claims ("Claims") and, to the extent that a Claim was deficient in any regard, the Claims Administrator notified the

[3] The Plan of Allocation was set forth in the Notice at pp. 13-18, *See* ECF No. 68-1, Ex. B at 13-18.

Claimant of the deficiency and advised the Claimant as to the possible ways to cure the deficiency. Ewashko Decl., ¶¶ 24-34.

Of the 22,379 Claims submitted to the Claims Administrator, 235 were filed on paper and 152 were filed online through the online filing component on the settlement website. *Id.*, ¶ 11. The remaining 21,992 Claims were E-Claims, filed by 149 E-Claim filers. *Id.*, ¶ 15. E-Claim filers are typically banks, brokers, nominees and other third-party filers, who file Claims on behalf of a large number of Claimants. *Id.* Because E-Claim filers submit a high volume of Claims on behalf of multiple Claimants, the Claims Administrator provides E-Claim filers with the opportunity to submit a master claim form and mail a computer disc or submit an electronic file containing all the transactions of the Claimants on whose behalf the E-Claim filer is submitting a Claim. *Id.* This process is designed to expedite the claims process. *See id.*

If a Claim was deficient or defective, the Claims Administrator sent a rejection letter, a sample of which is attached as Exhibit A to the Ewashko Declaration, advising the Claimant that he, she, or it had 20 days to submit additional information to cure the Claim, or else the Claims Administrator would recommend the Claim for rejection. *Id.*, ¶¶ 25, 28. Of the 387 paper and online Claims, the Claims Administrator sent rejection letters for 181 Claims (or 46.8%). *Id.*, ¶ 24. Similarly, for the E-Claims, the Claims Administrator sent a Deficiency Email and Deficiency Spreadsheet, samples of which is attached as Exhibit B to the Ewashko Declaration, advising the Claimant that he, she, or it had 20 days to submit additional information to cure the Claim, or else the Claims Administrator would recommend the Claim for rejection. *Id.*, ¶ 27. Of the 21,992 E-Claims, 16,720 (or 76%) were incomplete or deficient and were filed by a total of 50 E-Claim filers. *Id.*

The Claims Administrator worked diligently with Claimants to resolve deficiencies where possible. *Id.*, ¶¶ 24-34. Among other things, the Claims Administrator sent Deficiency Emails and

Deficiency Spreadsheets to each of the 50 E-Claim filers. *Id.*, ¶ 27. The Claims Administrator's efforts also included a calling campaign, in which the Claims Administrator called or emailed Claimants 5 to 10 days prior to the deficiency response deadlines when Claimants had not fixed their deficient claims. ¶¶ 31-34. As a result of this process, a number of Claimants with initially deficient Claims are now eligible to participate in the Settlement.

Ultimately, as detailed in the Ewashko Declaration, after the deficiency process was complete, the Claims Administrator determined that 8,482 Claims are acceptable and should receive a distribution. Ewashko Decl., ¶¶ 44-45. This number includes 21 Late But Otherwise Eligible Claims (addressed in Section IV below). *Id.*, ¶ 45. These Claims represent a total Recognized Loss amount of $88,937,043.21.[4] *Id.*, ¶¶ 44-45, Exs. C and D. The Claims Administrator also determined that 13,897 Claims are not eligible and should be rejected for the following reasons: (i) 5,687 Claims did not result in a recognized loss under the Plan of Allocation; (ii) 7,692 Claims did not fit the definition of the Settlement Class; (iii) 464 Claims had uncured deficiencies; (iv) 20 Claims were duplicates; and (v) 34 Claims were withdrawn. *Id.*, ¶ 46 and Ex. E.

## IV. LATE BUT OTHERWISE ELIGIBLE CLAIMS

The Claims Administrator continued to receive Claims after the May 17, 2019 deadline. Although the Claims Administrator attempted to accept all eligible claims submitted after the deadline, there must be a final cut-off date after which no more Claims may be accepted so that a proportional distribution of the Net Settlement Fund may take place. *See In re Gypsum Antitrust Cases*, 565 F.2d 1123, 1127 (9th Cir. 1977) ("There is no question that in the distribution of a large class settlement fund, 'a cutoff date is essential and at some point the matter must be terminated.'") (citation omitted); *In re Orthopedic Bone Screw Prods. Liab. Litig.*, 246 F.3d 315, 329 (3d Cir.

[4] The Recognized Loss amount is $86,246,059.94 for timely valid Claims and $2,690,983.27 for Late But Otherwise Eligible Claims.

2001). Acceptance of additional Claims received during the finalization of the administration process and the preparation of this Motion would necessarily require a delay in the distribution. Accordingly, the Claims Administrator imposed a cut-off date of November 20, 2019 – over 6 months after the Court-imposed May 17, 2019 deadline.

Of all the 22,379 Claims submitted, 81 were postmarked after the May 17, 2019 deadline, but before the Claims Administrator's imposed cut-off date of November 20, 2019. Ewashko Decl., ¶ 37. Of these 81 Claims, 21 are otherwise eligible ("Late But Otherwise Eligible"). *Id.* These 21 Late But Otherwise Eligible Claims have been recommended for payment. *Id.* Co-Lead Counsel and the Claims Administrator believe that when the equities are balanced, it would be unfair to prevent an otherwise valid Claim from participating in the distribution of the Net Settlement Fund solely because it was submitted after the deadline to submit Claim Forms, but while the Claims were still being processed. *See In re Gypsum*, 565 F.2d at 1128 (district court has discretion to grant late claims); *see also In re "Agent Orange" Prod. Liab. Litig.*, 689 F. Supp. 1250, 1261-63 (E.D.N.Y. 1988) (court permitting the qualifying late claimants and opt-out claimants to participate in the settlement distribution because "[t]he cost to the fund of admitting late claimants and readmitting the opt-out claimants to the class action should be relatively small. No significant administrative costs need be incurred to allow the late claims and opt-out claims"). Accordingly, the Court should approve Co-Lead Counsel's recommendation and permit the Claims Administrator to include the Late But Otherwise Eligible Claims in the Distribution Plan. *See* Ewaskho Decl., ¶¶ 37, 45, 49.

Additionally, the Court should order that no Claims or responses to deficiency letters received after November 20, 2019 be included in the distribution. *Id.* "Drawing a line is essential to achieve certainty and finality in such a large class action." *Hartman v. Powell*, No. 00-5356, 2001 WL 410461, at *1 (D.C. Cir. Mar. 15, 2001); *see also In re Citigroup Inc. Sec. Litig.*, No. 09-MD-

2070 (SHS), 2014 WL 7399039, at *4 (S.D.N.Y. Dec. 29, 2014) (quoting *In re Gypsum*, 565 F.2d at 1127).

## V. DISTRIBUTION OF NET SETTLEMENT FUND

Consistent with the terms of the Plan of Allocation and with the Court's approval, the Claims Administrator will conduct an Initial Distribution of the Net Settlement Fund to all Claimants on a *pro rata* basis whose distribution payments calculates to $10.00 or more. Based on the substantial experience of Co-Lead Counsel in similar distributions, it can be expected that a certain number of the payments to be distributed to Settlement Class Members who filed valid Claims will not be cashed promptly. To encourage Authorized Claimants to promptly cash their distributions and to avoid or reduce future expenses relating to unpaid distributions, Co-Lead Counsel propose that all the distribution checks bear a notation "CASH PROMPTLY. VOID AND SUBJECT TO REDISTRIBUTION IF NOT CASHED BY DATE 90 DAYS AFTER ISSUE DATE." Ewaskho Decl., ¶ 49(b).

The Claims Administrator will make reasonable and diligent efforts to encourage Authorized Claimants who are entitled to participate in the distribution of the Net Settlement Fund to cash their distribution. However, if after nine months any funds remain in the Net Settlement Fund, by reason of uncashed checks or otherwise, Co-Lead Counsel, in consultation with the Claims Administrator, will determine if it is cost-effective to conduct a Second Distribution. During the Second Distribution, any amounts remaining in the Net Settlement Fund after the Initial Distribution, after payment of Notice and Administration Expenses (including the estimated costs of such Second Distribution), Taxes, and any escrow fees, will be redistributed to all Authorized Claimants in the Initial Distribution who cashed their distribution checks and would receive at least $10.00 from the Second Distribution. Following the Second Distribution, additional redistributions will occur following the same process of the Second Distribution until no funds remain in the Net Settlement

Fund or until Co-Lead Counsel, in consultation with the Claims Administrator determine additional distributions are no longer economically feasible. *Id.*, ¶ 49(a).

If funds remain in the Net Settlement Fund after the additional distributions, at the discretion of Co-Lead Counsel, distributions would be made on a *pro rata* basis for Claims that were previously submitted but modified after November 20, 2019 and that would have been eligible for payment or an additional payment under the Plan of Allocation if received prior to November 20, 2019, but only to the extent that the additional distribution would bring them into parity with other Authorized Claimants. *Id.*, ¶ 49(f).

Finally, following this discretionary distribution, if any funds remain in the Net Settlement Fund after payment of any further Notice and Administration Costs and Taxes, with the Court's approval, the remaining balance shall be contributed to the Investor Protection Trust, a non-sectarian, not-for-profit organization dedicated to investor education. *See* Blandin Decl.[5] ¶ 2; *see also In re Volkswagen "Clean Diesel" Mktg., Sales Practices, and Prod. Liab. Litig.*, 2019 WL 2077847, at *4 (N.D. Cal. May 10, 2019) (approving Investor Protection Trust as the *cy pres* beneficiary in a securities class action settlement); *Rihn v. Acadia Pharm. Inc.*, 2018 WL 513448, at *4 (S.D. Cal. Jan. 22, 2018) (same). The proposed Class Distribution Order filed herewith confirms the Settlement's provisions for such redistribution of any residue of the Net Settlement Fund.

## VI. RELEASE OF CLAIMS

The Court should also order that all persons involved in the review, verification, calculation, tabulation, or any other aspect of the processing of the Claims submitted herein, or otherwise involved in the administration or taxation of the Settlement Fund or the Net Settlement Fund, including Lead Plaintiffs, Co-Lead Counsel, the Claims Administrator, any other agent designated

---

[5] Declaration of Don M. Blandin in Support of Lead Plaintiff's Motion for Approval of Distribution Plan ("Blanding Decl.") submitted on behalf of Investor Protection Trust.

by Co-Lead Counsel, or the Defendants' Releasees and/or their respective counsel (collectively "Released Distributors"), are released and discharged from any and all claims arising out of such involvement, and all Settlement Class Members be barred from making any further claim against the Net Settlement Fund or the Released Persons beyond the amount allocated to them. *See* Stipulation, ¶ 28.

## VII. THE COURT SHOULD APPROVE PAYMENT OF ADMINISTRATION-RELATED FEES AND EXPENSES

Based on the work performed by the Claims Administrator, the total fees and expenses charged by the Claims Administrator in this matter are $310,619.57. Ewashko Decl. ¶ 48, Ex. F (compilation of Claim's Administrator's invoices). To date the Claims Administrator has received payment of $217,683.48. Accordingly, there is a total of $85,244.97 payable to the Claims Administrator. The estimate to conduct the Initial Distribution is $18,619.52. Therefore, Co-Lead Counsel request that the Court authorize the payment to the Claims Administrator, from the Settlement Fund, of $103,864.49 consisting of $85,244.97 for fees and expenses actually accrued and $18,619.52 in anticipation of the work that will be performed for the first distribution.[6]

## VIII. RECORDS RETENTION AND DESTRUCTION

Last, the Court should order that: (i) two years after the Initial Distribution, or one year after the Second Distribution (if it occurs), the Claims Administrator shall destroy the paper copies of the Claims and all supporting documentation; and (ii) one year after final distribution of the Net Settlement Fund, the Claims Administrator shall destroy the electronic copies of the Claims and all supporting documentation.

[6] If the anticipated fees and expenses to conduct the first distribution is greater than the actual cost to conduct the distribution, the excess will be returned to the Net Settlement Fund.

## IX. CONCLUSION

For the above reasons, Lead Plaintiffs respectfully request that the Motion be granted.

Dated: January 17, 2020

Respectfully submitted,

**THE BRISCOE LAW FIRM, PLLC**

By: /s/ Willie Briscoe
Willie Briscoe
Texas Bar No. 24001788
12700 Park Central Drive, Suite 520
Dallas, Texas 75251
Telephone: (972) 521-6868
Facsimile: (281) 254-7789

**THE ROSEN LAW FIRM, P.A.**
Jacob Goldberg
Keith R. Lorenze (TX Bar #24046313)
101 Greenwood Avenue, Suite 440
Jenkintown, PA 19046
Telephone: (215) 600-2817
Facsimile: (212) 202-3827

and

Laurence Rosen
Philip Kim
275 Madison Avenue, 34th Floor
New York, NY 10016
Telephone: (212) 686-1060
Facsimile: (212) 202-3827

**GLANCY PRONGAY & MURRAY LLP**
Lionel Z. Glancy
1925 Century Park East, Suite 2100
Los Angeles, CA 90067
Telephone: (310) 201-9150
Facsimile: (310) 201-9160

***Attorneys for Lead Plaintiffs and the Class***

**CERTIFICATE OF SERVICE**

I hereby certify that the foregoing document was served on all counsel of record through the Court's CM/ECF filing system.

*<u>/s/ Willie C. Briscoe</u>*
WILLIE C. BRISCOE